**Phillip J. WILLIS, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 5, 2003.

Decided Feb. 10, 2004.

---

Matthew P. Kelly, Wilkes–Barre, for petitioner.

Arthur R. Thomas, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Phillip J. Willis (Willis) petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board) which denied his request for administrative relief. We affirm.

Willis was originally sentenced to 3 years and 11 months with an original maximum expiration date of April 18, 2003. On May 7, 2001, the Board released Willis on parole to live at the Gateway Rehabilitation Center (Center). The Center is a private, nonprofit substance abuse treatment facility. Participation in an inpatient drug/alcohol treatment program was a special condition of Willis's parole. Willis had resided at the Center for two months and 13 days, when he was discharged on July 20, 2001.

In November 2001, Willis was arrested for simple assault and possession of drugs. Willis pleaded guilty to both counts. By decision dated February 5, 2003, the Board recommitted Willis as a convicted parole violator to serve 18 months backtime. The Board recalculated a new maximum term expiry of February 16, 2004. This new maximum term reflected the unexpired term of Willis's original sentence with no credit for the two months and 13 days that he resided at the Center.

Willis sent a letter to the Board challenging the Board's failure to credit time spent at the Center. Willis alleged that the Center was a "secure facility" from which he could not leave on his own accord. On April 11, 2003, the Board held a special evidentiary hearing to determine the custodial nature of the Center and whether Willis was entitled to credit for time spent at the Center while on parole.

Based upon the evidence presented, including the testimony of Dan Kownacki, Assistant Program Director of the Center, the hearing examiner found that Willis could have left the building through the front door or other exits without any treatment staff physically restraining him. The locks on the doors only kept people out, but did not prevent residents from leaving. The windows were not locked. If Willis left the building, he would not have been

charged with escape. Based upon these findings, the Board concluded that the circumstances at the Center were not so restrictive as to permit Willis to receive credit on his sentence for time spent there while on parole. By decision dated May 6, 2003, the Board declined to credit Willis's backtime with time spent at the Center.

On June 5, 2003, Willis filed an administrative appeal, which the Board denied. Willis now petitions for this Court's review.[1] Willis raises the issue of whether the Board erred in determining that Willis was not entitled to credit against his maximum sentence for time spent at the Center. Willis contends that he is entitled to credit due to the restrictive nature of the Center. We disagree.

Section 21.1(a) of the act commonly known as the Parole Act,[2] gives the Board discretion to recommit as a parole violator any parolee who is convicted, found guilty or pleads nolo contendere to any crime punishable by imprisonment. If recommitment is so ordered, the parolee shall "serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled." Section 21.1(a) of the Parole Act. In computing this recommitment term, the Parole Act prohibits credit for any time spent "at liberty on parole." *Id.*

While the phrase "at liberty on parole" is not defined by the Parole Act, our Supreme Court has indicated that the phrase does not mean at liberty from all confinement but at liberty from confinement on the particular sentence for which the convict is being reentered as a parole violator.[3] *Cox v. Pennsylvania Board of Probation and Parole,* 507 Pa. 614, 493 A.2d 680 (1985). The issue in *Cox,* as here, was whether the parolee was entitled to credit for time spent in an inpatient drug rehabilitation facility. The Supreme Court determined that the parolee bears the burden of establishing that the specific characteristics of the program constitute restrictions on his liberty sufficient to warrant credit on his maximum sentence. *Id.* Due to a deficient factual record, the matter was remanded to the Board for findings on the specific characteristics of the program. *Id.* The Court directed that the inquiry must focus on the nature of the program and the restrictions on the participant's liberty to determine whether the facility was equivalent to incarceration. *Id.* Credit is required if the nature of the restrictions placed on participants can be equated with custody or imprisonment. *Id.* A reviewing court may "not interfere with the Board's determination of that is-

---

1. This Court's scope of review of a decision by the Board is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether the constitutional rights of the parolee was violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704, *Gaito v. Pennsylvania Board of Probation and Parole,* 128 Pa.Cmwlth. 253, 563 A.2d 545 (1989), *petition for allowance of appeal denied,* 525 Pa. 589, 575 A.2d 118 (1990).

2. Act of August 6, 1941, P.L. 861, *added by* Section 5 of the Act of August 24, 1951, P.L. 1401, *as amended,* 61 P.S. § 331.21a(a).

3. The Supreme Court explained:

Any other interpretation would be in conflict with other provisions of the statute, and with the long established policy of the Commonwealth. During the time that a convict may be on parole from a particular offense he might be confined in a Pennsylvania prison on another offense, or in a prison of another state, or in a federal prison, or in a mental institution, or in an enemy prison camp during a war. It was not the intent of the legislature to have the words "at liberty" to mean freedom from confinement under all these and other conceivable circumstances.

*Cox,* 507 Pa. at 619, 493 A.2d at 683.

sue unless it acts arbitrarily or plainly abuses its discretion." *Id.*

Following *Cox*, in *Jackson v. Pennsylvania Board of Probation and Parole*, 130 Pa.Cmwlth. 527, 568 A.2d 1004 (1990), this Court examined whether an in-patient treatment program was sufficiently restrictive so as to permit credit for time served there. We stated:

> The Board found that Eagleville Hospital is not a secure facility. The doors to the hospital are not locked, there is no fencing around the facility, and the hospital does nothing to stop the patients from leaving. Additionally, the hospital does not treat parolees differently than other patients with the exception that if the parolee were to leave the hospital before completing the program, the hospital would notify the parole authorities. Based on these facts, the Board found that the in-patient program does not have sufficient custodial aspects to characterize the time spent there as confinement rather than at liberty. We conclude that the Board has neither acted arbitrarily nor abused its discretion.

*Id.* at 1006.

Similarly, in *Meehan v. Pennsylvania Board of Probation and Parole*, 808 A.2d 313 (Pa.Cmwlth.2002), *petition for allowance of appeal denied*, 573 Pa. 669, 820 A.2d 706 (2003), we examined another in-patient drug program and determined that the parolee failed to establish that the conditions were so restrictive as to constitute incarceration entitling him to credit for time spent there. We stated:

> Although the evidence indicates that parolees are closely monitored at Keenan House, we nonetheless believe that it supports the Board's determination that Meehan failed to meet his burden of proving that the conditions at Keenan House were so restrictive as to constitute the equivalent of incarceration. In

particular, as the Board noted, Meehan was not locked in and could have walked right out the door. Nobody at Keenan House would have been authorized to stop him. In addition, a parolee who left Keenan House would not be considered an escapee, but a parole absconder.

*Meehan*, 808 A.2d at 316–317.

Conversely, in *McMillian v. Pennsylvania Board of Probation and Parole*, 824 A.2d 350 (Pa.Cmwlth.2003), this Court reversed the Board and awarded the parolee credit to his maximum sentence for time served in a community corrections center. The evidence showed that there was a 72–hour processing period during which the parolees were not permitted to leave the facility at all, and after which they are assigned a counselor and required to comply with the facility's rules and regulations, including mandatory participation in all programs and permitted leisure time based on the inmate's status and behavior; the parolee was in "pre-release status" and not technically on parole; and the director of the facility referred to its residents as "inmates." *McMillian.* Based upon these factors, we determined that the extent of control authorities exercised over the parolee at the center was a sufficient restraint on his liberty so as to constitute custody for purposes of credit. *Id.*

The facts presented in this case are more analogous to those found in *Jackson* and *Meehan*, than to *McMillian*. Here, the evidence showed that the residents of the Center are not confined against their will and could leave the Center if they so chose at any time. The front door of the Center is unlocked and there is no fence that would prevent a resident from leaving the campus. Residents who had left the Center without permission were not charged with the crime of escape. The staff members of the Center are not trained nor instructed to stop residents

from leaving. In fact, the Center's policy is not to stop residents from leaving.

While temporary residency at the Center was a condition of parole, and albeit, a restraint on Willis's liberty, it was not so restrictive as to constitute a form of incarceration or detention. Although leaving the Center would have constituted a violation of Willis's parole and resulted in his immediate arrest, such a result is no different than that which would occur upon the violation of any other condition of parole. Based upon our review of the record, we conclude that the Board has neither acted arbitrarily nor abused its discretion in its determination that the circumstances at the Center were not so restrictive as to permit credit on Willis's original sentence.

Accordingly, the order of the Board is affirmed.

## *ORDER*

AND NOW, this 10th day of February, 2004, the decision of the Pennsylvania Board of Probation and Parole, at Parole No. 7616T, dated June 20, 2003, is affirmed.

President Judge COLINS dissents.